Argued May 25, reversed and remanded for trial June 30, reconsideration denied July 27, petition for review allowed August 25, 1977

BROWN, *Respondent,*

*v.*

MULTNOMAH COUNTY DISTRICT
COURT et al, *Appellants.*

(No. A 7612-17585, CA 7893)

566 P2d 522

W. Michael Gillette, Solicitor General, Salem, argued the cause for appellants. With him on the brief was James A. Redden, Attorney General, Salem.

Elden M. Rosenthal, ACLU Cooperating Attorney, Portland, argued the cause and filed the brief for respondent.

Gildea & McGavic, P.C., and P. J. Graff, Eugene, filed a brief amicus curiae for Oregon Trial Lawyers Association.

Before Thornton, Presiding Judge, and Lee, Judge, and Beatty, Jr., Judge Pro Tempore.

THORNTON, P. J.

Beatty, J., Pro Tempore, concurring opinion.

## THORNTON, P. J.

The issue presented in this appeal is the constitutionality of certain amendments to the Oregon Vehicle Code enacted by the 1975 legislature purporting to 'decriminalize' the first offense of driving a motor vehicle under the influence of intoxicants (Oregon Laws 1975, ch 451, p 769, now codified as ORS 484.350 et seq).

The state appeals from a judgment order holding three of the above provisions unconstitutional.

Petitioner was cited on August 1, 1976, for a first offense driving under the influence of intoxicants (DUII), a Class A traffic infraction. On November 1, 1976, he moved for an order granting him a trial by jury, court-appointed counsel and requiring the state to prove its case beyond a reasonable doubt. The district court, respondent Judge Casciato presiding, denied the motion. Petitioner then petitioned for writ of review which was issued by the circuit court. Following argument the circuit court concluded:

"1. Insofar as ORS 484.375(1) denies a person charged with a first offense of Driving Under the Influence of Intoxicants, as defined in ORS 487.530, the right to a trial by a jury of his peers, said statute is unconstitutional under Article I, Section 11 of the Oregon Constitution and Amendment Fourteen of the United States Constitution; and

"2. Insofar as ORS 484.375(2) denies a person charged with a first offense of Driving Under the Influence of Intoxicants, as defined in ORS 487.530, the right to require the State, municipality or political subdivision prosecuting the charge, to prove its case beyond a reasonable doubt, said statute is unconstitutional under Article I, Section 11 of the Oregon Constitution and Amendment Fourteen of the United States Constitution; and

"3. Persons charged with a first offense of Driving Under the Influence of Intoxicants, as defined in ORS 487.530, are entitled to have court-appointed counsel, at public expense, upon a showing of indigency * * *."

[ 919 ]

The court ordered the district court to grant a jury trial, require the state to prove its case beyond a reasonable doubt and appoint an attorney upon a finding of the requisite indigency.

Prior to the 1975 amendments just referred to, DUII was punishable by imprisonment for not more than one year, by fine of not more than $1,000, or both. Former ORS 483.992(2). The offense was, under ORS 161.515(1),[1] a crime, the prosecution of which required the procedural safeguards of a right to trial by jury, right to counsel and right to a beyond-a-reasonable-doubt standard of proof for conviction.

In 1973, pursuant to HJR 11, an Interim Committee on Judiciary was assigned the task of revising existing motor vehicle and traffic laws. One of the major innovations suggested by the Interim Committee in its final report, the Proposed Revision, Oregon Vehicle Code (1975), was the decriminalization of first offense DUII by the inclusion of the offense in the category "traffic infraction" and the elimination of incarceration as a potential consequence for conviction of the offense. The apparent rationale for decriminalization of first offense DUII was the alleviation of court congestion.[2]

---

[1] ORS 161.515(1) provides:

"A crime is an offense for which a sentence of imprisonment is authorized."

[2] In their Foreword to the Proposed Revision, Oregon Vehicle Code (1975), the Committee on Judiciary, discussed the decriminalization of the first offense DUII:

"Another basic problem in the code involves its penalty provisions. Far too many penalty types—an assortment of almost 40 different combinations of fines and imprisonment—have made the laws inconsistent and confusing. Even the most minor traffic offense, such as illegal parking, now carries with it the possibility of imprisonment; and although a jail sentence is rarely if ever imposed in such cases, the fact that a motorist cited for a minor offense is exposed to that chance means that, under Oregon case law, he is granted the full panoply of procedural Due Process protections guaranteed to criminal defendants by the Constitution.

"Procedurally, the traditional criminal treatment of traffic

[ 920 ]

The provisions of the Oregon Vehicle Code germane to first offense DUII and recommended by the Interim Committee were enacted substantially as proposed. Those provisions relating to this appeal are codified as follows:

ORS 484.350 provides:

"(1) An offense defined in Oregon Vehicle Code is a traffic infraction if it is so designated in the statute

offenses has put severe stress upon Oregon's minor court system. Frequently, the heavy caseloads, particularly in district court (see Tables I—IX), have caused lengthy delays in bringing to trial the more serious cases such as those for driving under the influence of intoxicating liquor (DUII). Whereas a person charged with a felony in this state in most cases is tried within 60 days of arrest, it is not unusual to find periods of six months or longer between arrest and trial in DUII cases. The most significant result of such delays is that the problem driver continues to drive until and unless he is convicted.

"* * * * *

"The pivotal question to be decided by the Committee was whether to include the first offense DUII case within the Class A traffic infraction category or to continue to classify it as a crime. Testimony given by district judges before the Committee, as well as the survey of the selected district courts (see Tables I—VIII), clearly showed that most of the district courts' time is taken up by major traffic offenses and, particularly, trials for driving under the influence.

"A classification and adjudication system limited to the so-called 'minor' traffic cases would not measurably reduce the volume of docketed traffic cases in the district courts. Consequently, the Committee urges that the suggested traffic infraction classification of offenses include the first offense DUII if no element of dangerous driving is involved. By no means should this proposal be misread as de-emphasizing the serious nature of the offense or as being 'soft' on the drinking driver. A traffic infraction, not being punishable by imprisonment, would not demand criminal procedures and could be tried by the court without a jury and with the standard of proof being a preponderance of the evidence instead of proof beyond a reasonable doubt. The draft provides, however, for substantial fines to be levied in such cases, which would be in addition to administrative and court-imposed license sanctions and alcoholic treatment and driver improvement programs for dealing with this urgent problem. Repeat offenders would be prosecuted criminally for a Class A misdemeanor, punishable by a maximum of a year's imprisonment and a $1,000 fine. The draft sections further provide for increased sentencing flexibility in all traffic cases to enable the judge to have maximum effectiveness by means of the sentence he imposes and the enforcement of his orders. Plea agreements, whereby a defendant charged with DUII now can plead guilty to a lesser offense, would be specifically prohibited."

defining the offense or if the offense is punishable only by a fine, forfeiture, suspension or revocation of a license or other privilege, or other civil penalty.

"(2) A person who commits a traffic infraction shall not suffer any disability or legal disadvantage based upon conviction of crime.

"(3) Except as ORS 484.170 and 484.405 and other statutes relating to a traffic infraction otherwise expressly provide, the criminal and criminal procedure laws of this state relating to a violation as described in ORS 161.505 and 161.565 apply with equal force and effect to a traffic infraction.

"(4) A police officer may exercise the authority granted by ORS 133.310 and 484.100 to arrest an individual for a traffic infraction."

ORS 484.360(2)(a) provides:

"(2) A sentence to pay a fine for a traffic infraction shall be a sentence to pay an amount not exceeding:

"(a) $1,000 for a Class A traffic infraction."

ORS 484.365 provides:

"(1) Any offense that would otherwise be punishable as a Class A traffic infraction shall be prosecuted and be punishable as a Class A misdemeanor if the defendant has been convicted of any Class A traffic infraction or traffic crime within a five-year period immediately preceding the commission of the offense, and the previous conviction or dismissal was not part of the same transaction as the present offense.

"* * * * *

"(3) As used in this section, 'Class A traffic infraction' includes:

"(a) Driving while under the influence of intoxicants.
"* * * * *."

ORS 484.375 provides:

"(1) The trial of any traffic infraction shall be by the court without a jury. * * *

"(2) The state, municipality or political subdivision shall have the burden of proving the alleged traffic infraction by a preponderance of the evidence.
"* * * * *."

[ 922 ]

ORS 484.390 provides:

"(1) At any trial involving a traffic infraction only, defense counsel shall not be provided at public expense.

"(2) At any trial involving a traffic infraction only, the district attorney shall not appear unless counsel for the defendant appears. * * *

"* * * * *"

ORS 484.400 provides:

"A conviction before or after June 27, 1975, of any of the statutory counterparts of offenses designated as traffic infractions in chapter 451, Oregon Laws 1975, shall not be used to impeach the character of a witness in any criminal or civil action or proceeding."

ORS 484.415(2)(a) provides:

"(2) If a defendant is convicted of a traffic crime or a Class A traffic infraction, in addition to any fine or imprisonment authorized by law, including probation and suspension of imposition or execution of any sentence upon conditions ordered by the court, the judge may also:

"(a) Order the defendant's driver's license, permit or right to apply to be suspended until he successfully completes a defensive driving or other appropriate driver improvement course conducted by the Motor Vehicles Division, or other rehabilitative program * * *."

An accused has a right to counsel under the Sixth Amendment to the United States Constitution,[3] and Article I, § 11, Oregon Constitution,[4] in all criminal prosecutions where loss of liberty is a potential sanction. *Argersinger v. Hamlin,* 407 US 25, 92 S Ct 2006,

---

[3]The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

[4]Article I, § 11, Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel * * *."

32 L Ed 2d 530 (1972); *Stevenson v. Holzman,* 254 Or 94, 458 P2d 414 (1969). Similarly, the right to a beyond-a-reasonable-doubt standard of proof is "among the 'essentials of due process and fair treatment' " and is required in all criminal prosecutions on every fact necessary to constitute the crime with which the defendant is charged. *In re Winship,* 397 US 358, 359, 90 S Ct 1068, 25 L Ed 2d 368 (1970). The Sixth Amendment requires a right to a jury trial only with respect to criminal prosecutions for serious, as opposed to petty, offenses. *Duncan v. Louisiana,* 391 US 145, 88 S Ct 1444, 20 L Ed 2d 491 (1968). While the issue of whether Article I, § 11, Oregon Constitution, extends the right to a jury trial in petty offense criminal prosecutions has not been decided in Oregon, *see, Behnke v. Jordan,* 275 Or 199, 550 P2d 736 (1976); *State v. Hoffman,* 236 Or 98, 385 P2d 741 (1963); *Portland v. Erickson,* 39 Or 1, 62 P 753 (1900); *Wong v. City of Astoria,* 13 Or 538, 11 P 295 (1886), it is probable that it does.[5] Therefore, to be valid, petitioner's claim to the rights of a criminal defendant

---

[5] Section 11 of the Oregon Bill of Rights was adopted in 1857 without significant discussion. *See,* The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857 (C. Carey ed 1926). It was derived from and, with the exception of a deleted "a" and a comma, identical to Article I, § 13, Indiana Constitution of 1851. Palmer, *The Sources of the Oregon Constitution,* 5 Or L Rev 200, 201 (1926). The Indiana constitutional provision has been held to extend to an accused the right to a trial by jury in "all criminal prosecutions" notwithstanding federal and common law which grant the jury trial right only to prosecutions for serious offenses. *See, State ex rel. Rose v. Hoffman, Judge,* 227 Ind 256, 85 NE2d 486 (1949); *Gillespie v. Gilmore,* 159 Ind App 449, 307 NE2d 480 (1974); Frankfurter and Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv L Rev 917 (1926). The Indiana Supreme Court's interpretation of its constitutional provision appears correct. The jury trial provision in the original Indiana Constitution of 1816 granted a jury trial "in prosecutions by indictment or presentment." In a resolution to the Constitutional Convention of 1850, the Committee on Rights and Privileges was instructed by the delegates to "inquire into the expediency of so amending section five of the first article of the Constitution, as to guarantee to the inhabitants of this State their right to a trial by jury in all civil and criminal cases whatever, whatever may be the amount in controversy, or the nature of the offense." 1 C. Kettleborough, *Constitution Making in Indiana: A Source Book of Constitutional Documents with Historical Introduction and Critical Notes* 236 (Ind Hist Comm 1916).

requires at least that the prosecution of a first offense Class A traffic infraction be characterized as a criminal prosecution.[6]

It should be noted at the outset that a statute is presumed constitutional, and unconstitutionality must be established beyond a reasonable doubt. *City of Portland v. Goodwin,* 187 Or 409, 210 P2d 577 (1949), *overruled on other grounds City of Portland v. James,* 251 Or 8, 444 P2d 554 (1968). But the nomenclature the legislature chooses to employ to describe a particular proceeding cannot alter the application of substantive constitutional guarantees.

So far as we can determine, the Oregon Supreme Court has not indicated what factors it considers significant in determining, in a Sixth Amendment context, whether a particular proceeding is civil or criminal. Presumably the focus of inquiry is the nature of the sanction for "[t]he penalty authorized by the law of the locality may be taken 'as the gauge of its social and ethical judgments' " no less here than in determining whether an offense is petty or serious for purposes of a right to a jury trial. *See, Duncan v. Louisiana, supra,* 391 US at 160; *Frank v. United States,* 395 US 147, 89 S Ct 1503, 23 L Ed 2d 162 (1969).

The resolution of the issue of when or under what circumstances the legislature may properly denominate a particular proceeding "civil" as opposed to "criminal" for the purpose of extending or denying Sixth Amendment rights or rights guaranteed under Article I, § 11, Oregon Constitution, is, like the resolution of the question of whether a particular

---

[6] It is only after the resolution of this threshold issue that the issue of whether a criminal prosecution without the possibility of the imprisonment sanction requires the attachment of criminal defendant rights may be posed. We also note that while the precise issue in this case and the issue framed by the parties is whether criminal trial rights attach to a first offense DUII proceeding, there is no apparent reason to distinguish between DUII and other first offense traffic infractions for purposes of analysis.

offense is petty or serious, a matter of drawing lines along a continuum of sanctions.

The United States Supreme Court in *Kennedy v. Mendoza-Martinez,* 372 US 144, 83 S Ct 554, 9 L Ed 2d 644 (1963), after noting that the solution to the problem can be extremely difficult and elusive, identified a series of factors it deemed relevant on the issue of whether a particular Act of Congress was penal or regulatory for Sixth Amendment purposes.

> "* * * Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment— retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions. * * *" 372 US at 168-69.

To this list of factors may be added the element of whether adverse collateral consequences may attach to a conviction. *See,* Rossman, *The Scope of the Sixth Amendment: Who is a Criminal Defendant?,* 12 Am Crim L Rev 633, 642-45 (1975); Special Project, *The Collateral Consequences of a Criminal Conviction,* 23 Vand L Rev 929 (1970).

We conclude that the tests outlined in *Mendoza-Martinez* are, if not mandatory, adaptable to the problem of determining whether a particular sanction is criminal or civil.

The possible sanctions for a first offense Class A traffic infraction are $1,000 fine, ORS 484.360(2)(a), and suspension of defendant's driver's license. Additionally, a conviction for a first offense Class A traffic infraction is potentially an element in a second, plainly criminal, offense, ORS 484.365(1).

■  Applying the *Mendoza-Martinez* tests, we find the

absence of the possibility for loss of post-trial or post-conviction liberty and the absence of collateral consequences traditionally associated with criminal convictions to be of paramount significance. The absence of these elements, the lack of scienter as an element of the offense, the fact that loss of a license has been traditionally a civil, administrative sanction and the fact that we deem the amount of the fine not excessive[7] lead us to conclude that this legislative scheme for the prosecution for a first offense Class A traffic infraction may properly be characterized as civil for Sixth Amendment purposes and for purposes of Article I, § 11, Oregon Constitution.

That a pretrial arrest (ORS 484.350(4)) may occur is certainly an indication that what follows is a criminal proceeding. We do not, however, deem it controlling. We reach this conclusion partly because the indications that the proceeding here is not criminal are of greater significance, and partly because the rights guaranteed by the Sixth Amendment and by Article I, § 11, Oregon Constitution, cannot reduce the possibility of pretrial arrest or the duration of pretrial incarceration. Sixth Amendment rights are trial rights which affect the determination of guilt and the severity of post-conviction sanctions.

---

[7] A particular fine alone may be a criminal penalty and indicate a criminal prosecution. *See, e.g., United States v. Hamdan,* 522 F2d 276 (9th Cir 1977). There are several possible approaches to determining whether a particular fine is a civil or criminal penalty. Eleven tests are identified in Charney, *The Need for Constitutional Protections for Defendants in Civil Penalty Cases,* 59 Cornell L Rev 478 (1974). We conclude that a weighing of the relative severity of the fine is the most workable approach as it accommodates both objectivity and flexibility. This approach also fits into the *Mendoza-Martinez* test of excessiveness, is consistent with our view that the gravity of the sanction is the most relevant Sixth Amendment inquiry, and the approach has some Supreme Court support. *See, One Lot Emerald Cut Stones v. United States,* 409 US 232, 93 S Ct 489, 34 L Ed 2d 438 (1972) ("Moreover, it cannot be said that the measure of recovery fixed by Congress in § 1497 is *so unreasonable or excessive* that it transforms what was clearly intended as a civil remedy into a criminal penalty." 409 US at 237. (Emphasis supplied)). *See also,* Note, *The Concept of Punitive Legislation and the Sixth Amendment: A New Look at Kennedy v. Mendoza-Martinez,* 32 U Chi L Rev 290 (1965); Note, *Legislation — Statutory Penalties — A Legal Hybrid,* 51 Harv L Rev 1092 (1938).

Petitioner also argues that because conviction for a first offense Class A traffic infraction is potentially an element in a second criminal offense, the prosecution for the first offense must also be considered a criminal prosecution. We cannot agree that the first offense prosecution is necessarily bootstrapped and transformed into a criminal prosecution. The inquiry into whether a particular prosecution is criminal must focus on the sanction provided for the offense. Additionally, the inquiry into the nature of the second offense may be separated because the nature of the harm to be protected against is separate. The legislature may distinguish between persons who violate a traffic law on a single occasion and persons who repeatedly violate those laws. While the fact that the first offense is an element in the second offense is a collateral consequence of conviction, we conclude that it is not a controlling factor.

Although the point is briefed by the state, there is no contention in this case that state constitutional civil jury trial provisions, Article I, § 17, and Amended Article VII, § 3, Oregon Constitution, were violated.[8] The issue was not argued below and the trial judge based his ruling on Article I, § 11, Oregon Constitution, and not the civil jury trial provisions. However, because of the importance of the issue, the likelihood that it may be raised on remand, and to avoid a potential backlog of Class A traffic infraction cases in the trial courts, we conclude that smooth and expeditious judicial administration requires a determination of the issue.

Both Article I, § 17, and Amended Article VII, § 3, Oregon Constitution, preserve the right to a jury trial in civil cases. However, as noted in *Cornelison v.*

[8] Article I, § 17, Oregon Constitution, provides:
"In all civil cases the right of Trial by Jury shall remain inviolate."
Amended Article VII, § 3, Oregon Constitution, provides:
"In actions at law, where the value in controversy shall exceed $200, the right of trial by jury shall be preserved * * *."

[ 928 ]

*Seabold,* 254 Or 401, 404, 460 P.2d 1009 (1969), the "language of these sections is not particularly helpful in determining their scope." The constitutional provisions guaranteeing the right to a jury trial in "civil cases" and "actions at law" preserve the right only in the classes of cases where the right was customary at the time the constitution was adopted and in cases of a like nature. *Moore Mill & Lbr. Co. v. Foster,* 216 Or 204, 336 P2d 39, 337 P2d 810 (1959); *State v. 1920 Studebaker Touring Car et al.,* 120 Or 254, 251 P 701 (1927). The proceedings under the Oregon Vehicle Code for Class A traffic infractions did not exist at the time of the adoption of the Oregon Constitution and we find no similar proceedings at common law which ordinarily afforded parties the right to trial by jury. *See, Accident Prev. Div. v. N. Amer. Cont.,* 22 Or App 614, 540 P2d 391, Sup Ct *review denied* (1975). At common law both traffic offenses and offenses involving liquor and drunkenness were tried summarily as petty offenses. Frankfurter and Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv L Rev 917 (1926). *See also, State v. Webb,* 335 So2d 826 (Fla 1976).

While there is no legislative history on the point, the term "actions at law" used by the framers of our constitution in Amended Article VII, § 3, was probably employed simply in recognition of the traditional distinction between law and equity cases and to make clear that the right to jury trials was not being extended to include equity cases.

In *Van de Wiele v. Garbade,* 60 Or 585, 589, 120 P 752 (1912), our Supreme Court, in commenting on this distinction, observed that "actions at law" include those cases where the relief sought consists in the direct recovery of real or personal property, or some amount of money only.

It would appear that the instant proceeding would not be deemed "an action at law" as that term was used by the framers in Amended Article VII, § 3, Oregon

Constitution, nor would it be a "civil case" as that term was used in Article I, § 17. Rather, the instant proceeding is *sui generis.*

Accordingly, the civil jury trial provisions of the Oregon Constitution do not require a jury trial prior to conviction for a Class A traffic infraction.

Reversed and remanded for trial.

**BEATTY, J.,** Pro Tempore, concurring.

I join in the opinion of the court and would add the following comment.

At question in this case is the power of the Legislative Assembly to create new categories of offenses without automatically invoking all the constitutional procedural rights adhering to existing categories, a matter with important implications for all three branches of government.

For reasons set forth in the legislative history, the Legislative Assembly, characterizing its action as "decriminalization," has abstracted from the category "traffic crimes" undesired driver conduct ranging from improper left turns to DUII, and created a new category of offenses not called "criminal" and not subjecting the offender to jail penalties. These offenses, designated as "traffic infractions" are neither civil actions nor criminal prosecutions in conventional legal terms, but a form of hybrid prosecution. To make its purpose clear, the Legislative Assembly stated in the statute creating traffic infractions that the constitutional rights of appointive counsel, jury trial and proof beyond a reasonable doubt do not apply.

The legislative branch has the constitutional responsibility to identify conduct to be proscribed, to classify such conduct in a reasonable manner, and to change such classifications from time to time. Thus, within this decade, possession of less than one ounce of cannabis has been changed from a Class B felony, with a potential penalty of 10 years in prison, to a "viola-

tion" subject to a $100 fine. Adultery and fornication, crimes for generations, have been deleted from the lexicon of crime. Whether such classification creates a seamless web of logic is beside the mark. As Mr. Justice Holmes observed: "The life of the law has not been logic; it has been experience." It is important that the Legislative Assembly be permitted to retain the widest range of options constitutionally possible to deal with that experience. It does not follow, however, that because the Legislative Assembly has proclaimed the inapplicability of constitutional rights that they evaporate. The traffic infractor, great or small, is entitled to have them if the state's manner of dealing with his conduct invokes them.

In determining whether constitutional procedural rights attach to legal procedures, courts have generally considered the consequences which may attend conviction. Upon a traditional criminal conviction, the person convicted may commonly be subjected to the following range of sanctions, penalties and consequences: imprisonment, fine, costs, subjection to probationary controls, identification as a person with a criminal record, subjection to the doctrine of *res judicata* in subsequent civil litigation, loss of a license to engage in certain activity, and civil disabilities. In the case at bar, the fine, loss of license, referral to rehabilitation programs and probationary controls remain. However, the power of a court suspending imposition or execution of sentence to impose jail as a condition of probation no longer exists as to a Class A traffic infraction punishable as such, because the offense itself is no longer punishable by incarceration. ORS 137.540.

I agree, therefore, that the traffic infraction prosecution defined as first offense DUII does not require any one of the three claimed constitutional guarantees because the Legislative Assembly has removed the principal characteristics of a criminal prosecution which necessarily are relied upon to invoke them. A potential fine amounting to $1,000 is not sufficient

reason to overturn the legislative classification, to declare criminal that which is labeled as noncriminal, and to attach the full panoply of rights associated with traditional criminal prosecutions to what are treated now as traffic infractions.[1]

---

[1]Recognition of a hybrid offense will raise further questions in a legal system in which a sharp line of demarcation has commonly been thought to lie between matters criminal and matters civil. Are *Miranda* warnings required in traffic infractions? To what extent is the law of search and seizure applicable to traffic infractions? This court may well consider that prosecution of traffic infractions, and in particular first offense DUII, are sufficiently analogous to, although distinctly less than, a criminal prosecution to require such warnings and such restraints. In *DUII* offenses the arresting officer may not know until after the event whether the offense is prosecutable as a traffic infraction or a Class A misdemeanor. But resolution of such questions awaits another day.