BROWN, *Petitioner,*

*v.*

MULTNOMAH COUNTY DISTRICT
COURT et al, *Respondents.*

(CA 7893, SC 25407)

570 P2d 52

[ 96 ]

[ 96-a ]

Elden M. Rosenthal, ACLU Cooperating Attorney, Portland, argued the cause and filed a brief for petitioner.

Al J. Laue, Solicitor General, Salem, argued the cause for respondents. On the brief were W. Michael Gillette (former Solicitor General), and James A. Redden, Attorney General.

J. P. Graff of Gildea & McGavic, (P.C.), Eugene, filed a brief for Oregon Trial Lawyers Association as amicus curiea.

Gary D. Babcock, Public Defender, and Robert C. Cannon, Deputy Public Defender, Salem, filed a brief for the Office of the State Public Defender as amicus curiae.

LINDE, J.

Tongue, J., specially concurring.

Holman, J., dissenting.

## LINDE, J.

In the course of revising the Oregon Vehicle Code in 1975 (Or L 1975, ch 451) the legislative assembly placed the first offense of driving a motor vehicle under the influence of intoxicants (DUII) into a statutory category of "traffic infractions" as distinguished from "traffic crimes." ORS 484.365. The question before us is whether, in the light of the entire statutory scheme, this offense may be tried without the constitutional safeguards guaranteed defendants in criminal prosecutions.

Charged in district court with a first offense DUII, petitioner moved for an order appointing counsel for him as an indigent, granting him trial by jury, and requiring the state to prove its case beyond a reasonable doubt. These rights are expressly excluded in the trial of traffic infractions under the code, ORS 484.390(1), ORS 484.375(1), (2), and the district court denied all three demands. On writ of review the circuit court concluded that driving under the influence of intoxicants, even as a first offense, retains sufficient characteristics of a criminal charge to require compliance with the constitutional guarantees and ordered the district court to conduct petitioner's trial accordingly.

The Court of Appeals reached the contrary conclusion and reversed the order, 29 Or App 917, 566 P2d 522 (1977). We granted review to resolve the important constitutional questions involved. The case has been thoroughly briefed by the parties and *amici curiae,* and we have the benefit of the able opinion of the Court of Appeals. Whether the legislature effectively carried out its purpose to "decriminalize" the first offense of driving under the influence of intoxicants is a close question. For the reasons that follow, we arrive at a different assessment from that of the Court of Appeals and accordingly reverse.

### I

Of the three constitutional rights invoked by

petitioner, two—the right to counsel and to a jury trial—are guaranteed specifically in "criminal prosecutions." Section 11 of Oregon's Bill of Rights, Or Const art I, § 11, provides:

> In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; . . .[1]

■ The Court of Appeals concluded, upon reviewing our prior cases and the records of the Indiana constitution from which article 1, § 11 was taken, that the right to a jury trial extends to all offenses if they have the character of criminal prosecutions.[2] 29 App at 924, and note 5, 566 P2d at 526. We agree. The same is true of the right to be heard by counsel, although the right to appointed counsel at public expense requires separate discussion.

■ The third guarantee—proof beyond a reasonable doubt—is not expressed in the constitution, though it

---

[1] *See also* Or Const art I, § 16:

. . . In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of new trial, as in civil cases.

If it is determined that a state's own law and constitution do not provide the claimed safeguards, it then becomes necessary to consider the corresponding guarantees of the federal 6th amendment that bind the state by virtue of the 14th amendment. *See Duncan v. Louisiana,* 391 US 145, 88 S Ct 1444, 20 L Ed 2d 491 (1968), *Argersinger v. Hamlin,* 407 US 25, 92 S Ct 2006, 32 L Ed 2d 530 (1972).

[2] *Portland v. Erickson,* 39 Or 1, 62 P 753 (1900), distinguishing *Wong v. City of Astoria,* 13 Or 538, 11 P 295 (1886); *cf. Gillespie v. Gilmore,* 307 NE2d 480 (Ind App 1974) (violation of city ordinance) and cases there cited. *Compare Behnke v. Jordan,* 275 Or 199, 550 P2d 736 (1976), in which jury trial was claimed under a statute and the civil jury sections of the constitution, not art. I, § 11.

may well be implicit in the concept of a "criminal prosecution" as understood when the constitution was adopted in 1859. It has been statutory law in Oregon from 1864 (L 1864; Deady Crim. Code §203) to the present, see ORS 17.250(5), 136.415, and we may reasonably infer from the legislature's unchanged adherence to this standard of proof for traffic "crimes" that the legislature would expect it to continue to govern a trial of an offense as long as it remains a "criminal prosecution." In any event, this safeguard is required by due process under the federal 14th amendment not only in criminal prosecutions but in other proceedings of similar character. *In re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970) (juvenile court determination of delinquency).

▮▮ More than these three procedural rights hinges on the characterization of a traffic offense as a "crime" or an "infraction." The Bill of Rights also guarantees a defendant in a criminal case the right to a written accusation, to trial in the county where the offense was committed, to confront the witnesses against him in open court, and to subpoena witnesses. Art. I, § 11, *supra.*[3] It protects him against double jeopardy and against being compelled to testify against himself. Art. I, § 12. The prohibition against *ex post facto* laws, art. I, § 21, refers to criminal laws. *Fisher v. City of Astoria,* 126 Or 268, 269 P 853, 60 ALR 260 (1928); *In re Idleman's Commitment,* 146 Or 13, 27 P2d 305 (1934); *cf. Calder v. Bull,* 3 US (3 Dall.) 386, 1 L Ed 648 (1798)[4]. Of these guarantees, the statute also expressly withdraws the protection against double jeopardy from "traffic infractions," ORS 484.395, and, if the state's argument in this court is accepted, it

---

[3] *Cf. State ex rel Ricco v. Biggs,* 198 Or 413, 428-430, 255 P2d 1055, 38 ALR2d 720 (1953).

[4] Another open question is whether the guarantee of art. I, § 16, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense", depends on classifying the "offense" as "criminal," as the United States Supreme Court has recently said of the comparable clause of the 8th amendment. *Ingraham v. Wright,*—US—, 97 S Ct 1401, 1409, 51 L Ed 2d 711 (1977).

leaves the other rights within the future discretion of the legislature. Considering that some of these entered the state and federal constitutions as a result of "Abuses and Usurpations" charged against George III in the Declaration of Independence,[5] the question whether the distinction between "criminal prosecutions" and "infractions" is itself wholly in the discretion of the legislature has notable importance.

## II

■ It is beyond dispute that the legislature may define and enforce obligatory conduct by means other than the criminal law, as it does in taxation, or injuctive orders, or in creating private remedies, which may extend beyond compensatory damages. It may employ licenses—in effect, exemptions from a prohibition—conditioned upon prescribed qualifications and upon adherence to prescribed standards of conduct. It may take custody of persons in involuntary commitment or juvenile proceedings. Since the state has plenary power to devise its laws limited only by the state and federal constitutions,[6] *School Dist. No. 12 v. Wasco County,* 270 Or 622, 627, 529 P2d 386 (1974); *Wright v. Blue Mt. Hospital Dist.,* 214 Or 141, 145, 328 P2d 314 (1958) and cases there cited, it may decide to repeal criminal prohibitions, to define civil obligations enforceable by the state and its agencies, and to replace one with the other, so long as constitutional limits are observed.

The Oregon Vehicle Code represents a systematic

---

[5] "He has combined with others to subject us to a jurisdiction foreign to our constitution, and unacknowledged by our laws; giving his Assent to their Acts of pretended Legislation: . . . For depriving us, in many cases, of the benefits of Trial by Jury:—For transporting us beyond Seas to be tried for pretended offences: . . ." Declaration of Independence, V Jnls. Cont. Cong. 1774-1789 at 510 (July 4, 1776, Library of Congress 1906).

[6]This is sometimes confused with the notion of a "presumption of constitutionality," *see* 29 Or App at 925, 566 P2d at 526, an often misleading usage, since presumptions properly refer to the factual predicates (which may include the presumption that the legislature meant to enact a valid law) but not to the legal conclusions at issue.

effort to match legal sanctions and procedures with the types of conduct to be regulated. In some respects it is a hybrid of elements drawn from civil, criminal, and administrative law models.[7] It treats fines, forfeitures, and loss of licenses as "civil penalties," to be imposed for "traffic infractions" either by administrative acceptance of voluntary payment, ORS 484.310-484.320, or by a court upon a trial without a jury and upon proof "by a preponderance of the evidence," the standard used in civil cases. ORS 484.375. It authorizes the judge to suspend a driver's license for non-payment of a fine. ORS 484.415. It allows appeals by the prosecution as well as the defendant. ORS 484.405. It treats as crimes, triable by criminal procedure, all "major," ORS 484.010(5), or "serious," ORS 487.530 et seq., traffic offenses other than DUII. ORS 484.365. But it extends many of the typically criminal procedures of arrest, detention, release on bail or recognizance, and plea to traffic infractions as well as to traffic crimes. ORS 484.100-484.140, 484.350; *cf. also* ORS 484.435. On the other hand, it excludes infractions as a basis of legal disabilities or disadvantages attached to convictions of crime, ORS 484.350, including impeachment as a witness, ORS 484.400. As we have said, the use of these diverse elements in devising a system of traffic laws is within the state's discretion unless it departs from a constitutional standard, in this case primarily the standards prescribed by article I, § 11.

## III

There is no easy test for when the imposition of a

[7] The legislative interim committee that prepared the code considered the trafffic offense procedures of several states, including the administrative model used in New York. It concluded:

. . . Although administrative adjudication may merit further consideration by this state in the future, we believe that such a scheme is not appropriate for Oregon's needs, at least for the present time. . . . The Committee's view, then, represents a middle position which, while incorporating many of the procedural advantages of an administrative adjudication system, retains the traditional role of the traffic judge and is designed to alleviate the caseload problems now facing him.

Or. Leg. Ass., Committee on the Judiciary, Interim Report: Proposed Revision of the Oregon Vehicle Code XIV (1975).

sanction is a "criminal prosecution" within the meaning of the constitutional guarantees. The starting point, of course, is the law under which the sanction is imposed. When the legislature has defined conduct as a criminal offense, it is a criminal offense for constitutional purposes even if the same consequences could have been attached to the same conduct by civil or administrative proceedings. But it does not follow that a law can avoid this result simply by avoiding the term "criminal" in defining the conduct to be penalized. Constitutional guarantees have more substance than that.

■ A number of indicia have been used to determine whether an ostensibly civil penalty proceeding remains a "criminal prosecution" for constitutional purposes. *See* Charney, *The Need for Constitutional Protections for Defendants in Civil Penalty Cases,* 59 Corn L Rev 478 (1974), Clark, *Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis,* 60 Minn L Rev 379 (1976). All are relevant, but none is conclusive on what we believe is the ultimate determination.

■ A. *Type of offense.* On the whole, it is not very helpful to refer to the "gravity" or the "nature" of the offense as a criterion,[8] since this is the legislative judgment which the state claims to have made in "decriminalizing" it. The offense may have been a crime at common law, or at the time the constitution was adopted, or for a long time thereafter. Similarly, it may involve traditional elements of *mens rea* or a lower degree of culpability. These characteristics can bear on whether the downgrading marks a genuine change in the public assessment of the conduct or merely seeks procedural short-cuts, but they do not mean that what was once a crime can never be regulated by other means.

---

[8] *See e.g., District of Columbia v. Colts,* 282 US 63, 75 L Ed 177 (1930), stating that reckless driving "in its very nature is malum in se." This court has so regarded DUII before its "decriminalization." *See State v. Boag,* 154 Or 354, 59 P2d 396 (1936); *State v. Davis,* 207 Or 525, 296 P2d 240 (1956).

■ Traffic offenses as we know them are largely a 20th-century phenomenon. They may well have been assigned to the courts in criminal form as much because the form was familiar and the courts available as by any deliberate choice among alternatives. This does not prevent a later decision not to treat traffic offenses as crimes.

■ B. *Penalty.* The prescribed penalty is generally regarded as the single most important criterion, at least when it involves imprisonment. Indeed, "decriminalization" of one-time criminal offenses ordinarily assumes that the sanction of imprisonment must be abandoned, and the state's main argument is that the line between traffic infractions and traffic crimes can be defended by this criterion alone. We agree that "imprisonment" cannot be used as "punishment" for a civil offense; but here, too, as much depends on the significance of those words as on the confinement itself. The law employs compulsory confinement in looking after persons suffering from mental incapacity or infectious disease, or children in need of supervision or protection, in securing material witnesses or aliens awaiting deportation, without turning these into criminal cases, so long as the detention is for a non-punitive purpose and ends with that purpose. It is the punitive use of detention, not the detention as such, that defines the criminal offense.[9]

By the same token, the absence of potential imprisonment does not conclusively prove a punishment non-criminal. The assessment has been made on two factors—the severity of the penalty and whether it is "infamous." See Clark, *supra,* at 383, 401-404, Charney, *supra,* at 501-505, and cases cited. The second of these relates again to the *significance* attached to

---

[9] A public trial on a plea of not guilty to a charge of pulmonary consumption, over a defense of mere moral illness in attempting to defraud an insurance company, is described in Samuel Butler's *Erewhon,* reprinted in Goldstein, Dershowitz, and Schwartz, Criminal Law; Theory and Process 253 (1974).

[ 103 ]

imprisonment to which we have referred, even for a short term. But a large fine may be as severe, in practical terms, as a short imprisonment, and so strikingly severe as to carry the same punitive significance.

The Oregon Vehicle Code presently sets the maximum fines for traffic infractions at $50 for a Class D infraction, $100 for Class C, $250 for Class B, and $1,000 for a Class A infraction. ORS 484.360. Class A includes only two named offenses: Driving while under the influence of intoxicants and failure to perform the duties of a driver involved in an accident resulting only in property damage, ORS 484.365(3),[10] although others may fall into that class. ORS 484.370.

■ Courts are understandably reluctant to pick a particular sum of money as the rigid measure of a defendant's constitutional rights, for this measure has less history and much less stability than the six months of jail chosen as the measure of a federal petty offense. *Cheff v. Schnackenberg,* 384 US 373, 86 S Ct 1523, 16 L Ed 2d 629 (1966), *and see Baldwin v. New York,* 399 US 66, 90 S Ct 1886, 26 L Ed 2d 437 (1970). Two federal courts of appeals have recently drawn the line at $500. *United States v. Hamdan,* 552 F2d 276 (9th Cir 1977), *Douglass v. First National Realty Corp.,* 543 F2d 894 (DC Cir 1976). If a line must be drawn, this is plausible, even if it cannot be conclusive nor permanent. It proves little about a $1,000 fine for driving under the influence of intoxicants that much larger civil penalties are levied against business enterprises for violations of various regulations in the course of business.[11] We deal here with fines payable by ordinary individuals for misconduct unrelated to the pursuit of a profitable activity, not by regulated truckers or cabdrivers, and indeed with the rights of a

[10] Failure to perform the duties of a driver involved in an accident or collision causing injury or death is a traffic crime. ORS 484.365(4). These duties are prescribed in ORS 483.602-483.606.

[11] Or against a labor union, *Muniz v. Hoffman,* 422 US 454, 95 S Ct 2178, 45 L Ed 2d 319 (1975).

[ 104 ]

petitioner who claims the right to counsel as an indigent. In this context a $1,000 fine, if not in itself a criminal rather than civil penalty, must be at the margin of legislative discretion. At the least it is strong evidence of the punitive significance that the legislature meant to give this fine.

■ C. *Collateral consequences.* No similar significance attaches to the direct or collateral suspension or revocation of a driver's license for a traffic offense. The offense does not become "criminal" rather than "civil" merely because the loss of a license is a great inconvenience, so long as the suspension or revocation reflects a legislative, judicial, or administrative judgment that a traffic offender should not continue to drive. Again the question is whether the deprivation is regulatory or another form of punishment, as for instance its imposition for nonpayment of a fine, ORS 484.415.[12]

D. *Punitive significance.* Evidence of punitive intent has led the United States Supreme Court to hold ostensibly non-penal sanctions to the constitutional standards for crimes. *Kennedy v. Mendoza-Martinez,* 372 US 144, 83 S Ct 554, 9 L Ed 2d 644 (1963). This test requires courts to face the issue of the criteria of "punishment," one of the oldest and most difficult issues in law. It is not made easier when phrased in terms of the *purpose* of the law. The purposes of criminal law (apart from incapacitating dangerous offenders by confinement) are customarily stated to be "retribution and deterrence", see *id.* at 169, meaning deterrence both of the individual defendant and of persons in his situation generally. But deterrence is equally a purpose of other sanctions, so that "punishment" cannot be deduced from it, and retribution is purposive only in the sense of a legislative aim to reflect the outrage of the public or the victims of the

---

[12]Compare the difference in ORS 161.685 between the use of commitment for civil contempt until a fine is paid (subsection 2) and "imprisonment" for contempt for non-payment for as much as a year, with time credited toward the fine (subsection 4).

condemned acts. And this aim, in turn, is confined by the constitutional prohibition against vindictive justice.[13] "What distinguishes a criminal from a civil sanction and all that distinguishes it," a leading scholar concluded, "is the judgment of community condemnation which accompanies and justifies its imposition."[14] The stigma of that condemnation can accompany the imposition of a sanction whether it is imprisonment, a fine, or something else; and its presence in a judgment of conviction, as much as the potential sanction itself, makes the right to a jury peculiarly appropriate to a criminal prosecution.

■ This test, whether a judgment carries stigmatizing or condemnatory significance, has been criticized for its difficulty. See Charney, *supra,* at 496. True, we have no litmus paper for punitive significance, and that used by the United States Supreme Court shows red and blue in inconsistent patterns. In part this difficulty is unavoidable, since the significance of a law may differ in the eyes of legislators, of defendants, and of the general public. Moreover, their views can change with time, and a legislative decision to decriminalize an offense may lead the public's perception as well as follow it. The very language of the law contributes to the problem when civil penalties are imposed in the familiar terms of criminal law, no

---

[13]The 1859 constitution commits the state to the hopeful aim of "reformation," whatever the more recent pessimism on that score.

Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice. Or Const art I, § 15.

[14]Hart, *The Aims of the Criminal Law,* 23 Law & Contemp. Prob. 401, 404 (1958). Clark, *supra,* agrees:

. . . Where we sense an animus behind the infliction of pain, even where an alternate purpose may exist, we may become ambivalent in our attitude, attempting to determine what the other person "really meant." Whether or not punishment exists thus frequently depends on the attitude, or the motivation or dominant purpose, if you will, of the party who imposes the burden in question.

This perception of the psychological nature of punishment seems reasonable enough. . . .

But he criticizes reliance only on legislative history to establish this element. 60 Minn L Rev at 438.

doubt because they are familiar. "Penalty" is cognate to penal and punishment, and the code itself states that infractions are "punishable." ORS 484.350(1). A defendant who is asked to declare whether he is "guilty," ORS 484.190, 484.310-484.320, or who is "convicted" as such, ORS 484.365, 484.415, may reasonably conclude that the judgment carries the stigma of condemnation. Again, these terms of the code are only relevant to the issue, not conclusive.

■ We have, however, additional evidence of the legislative assessment of DUII compared to the other traffic offenses. The legislative interim committee that prepared the code was at pains to point out that it did not regard this offense as less serious than reckless driving and others that remain "major" or "serious" offenses, triable as crimes. Its report, supra note 7, stated:

> A classification and adjudication system limited to the so-called "minor" traffic cases would not measurably reduce the volume of docketed traffic cases in the district courts. Consequently, the Committee urges that the suggested traffic infraction classification of offenses include the first offense DUIL if no element of dangerous driving is involved. *By no means should this proposal be misread as de-emphasizing the serious nature of the offense or as being "soft" on the drinking driver.* A traffic infraction, not being punishable by imprisonment, would not demand criminal procedures and could be tried by the court without a jury and with the standard of proof being a preponderance of the evidence instead of proof beyond a reasonable doubt. . . . (Emphasis added.)

Also the committee, and the legislature, retained the criminal classification for the second and subsequent charges of DUII within five years, with potential punishment by imprisonment for as much as a year. ORS 484.365, ORS 161.545.[15] The indication is strong

---

[15]Petitioner contends that first-offense DUII must be tried as a criminal prosecution because the code makes it an element in the second offense, which is a crime. *Cf. Artis v. Rowland,* 64 Wash2d 576, 392 P2d 815 (1964). However, apart from its significance for the apparent legisla-

that this decision represented a legislative desire to "decriminalize" the procedure rather than the offense, relying on the single criterion of the $1,000 fine instead of imprisonment to accomplish this aim.

E. *Arrest and detention.* Finally, it bears on the constitutional distinction between a civil case and a "criminal prosecution" that the Oregon Vehicle Code retains many of the pre-trial practices used in the enforcement of criminal laws. It is by now well understood that this process encompasses the stages before charge, plea, and trial as well as the trial itself. The statutes place major traffic offenses with felonies and misdemeanors in the law of arrest. ORS 133.310. A person thus arrested faces the possible use of physical restraints, such as handcuffs, a search of the person, booking (including the taking of fingerprints or photographs), and detention in jail if not released by police officers, or at a later time by a magistrate. *See* ORS 484.435, ORS 484.100-484.140. Of course a traffic offender must be subject to being stopped, compare ORS 131.605-131.615, and in the case of apparent intoxication prevented from resuming his driving. Often that could be accomplished by other means. But detention beyond the needs of identifying, citing, and protecting the individual or "grounding" him, especially detention for trial unless bail is made, comports with criminal rather than with civil procedure and is surely so perceived by the public.[16]

---

tive assessment of DUII, this use of the first offense in the second can properly be challenged only in the later prosecution. That was the situation in *McKinney v. Alabama,* 424 US 669, 96 S Ct 1189, 47 L Ed 2d 387 (1976), on which petitioner relies.

[16] Of course this single element does not turn all traffic offenses into criminal prosecutions. We feel safe in assuming that it is more important to the legislative scheme of the Oregon Vehicle Code to decriminalize traffic infractions than to retain the incompatible aspects of "full custody" detention for those offenses that otherwise are effectively decriminalized. But with respect to DUII, where such detention is most likely to be used, it is one more reason to doubt that this aim has been accomplished.

## IV

■ On reviewing these elements we conclude that, on balance, the code's offense of driving under the influence of intoxicants, and its enforcement and punishment, retain too many penal characteristics not to be a "criminal prosecution" under article I, section 11 of the constitution. It follows, as we have said, that petitioner is entitled to the protections of this and other sections governing criminal prosecutions, including the right to representation by counsel. But the Oregon Vehicle Code does not preclude an appearance with counsel in traffic infraction cases; to the contrary, it provides that the prosecution may not appear by an attorney unless defendant has counsel. ORS 484.390. The question is, rather, whether a defendant who cannot afford counsel is entitled to court-appointed counsel to defend against a DUII charge.

Petitioner contends that for a trial involving the potential $1,000 fine and collateral consequences at stake here, even without imprisonment, the United States Constitution mandates appointment of counsel under the Supreme Court's decision in *Argersinger v. Hamlin, supra* n 1. That may well be so, although the majority opinion left the issue open. The words of Justices Powell and Rehnquist, concurring, are particularly apropos:

> Serious consequences also may result from convictions not punishable by imprisonment. Stigma may attach to a drunken-driving conviction or a hit-and-run escapade. Losing one's driver's license is more serious for some individuals than a brief stay in jail. . . .
>
> * * * * *
>
> . . . The thrust of the Court's position indicates . . . that when the decision must be made, the rule will be extended to all petty offense cases except perhaps the most minor traffic violations. . . . 407 US at 48, 51, 32 L Ed 2d at 544, 546.

However, we need not anticipate whether this view has become federal law. Oregon has long provided

court-appointed counsel for indigent defendants in criminal prosecutions. *See* ORS 135.050. Traffic crimes are no exception. Before *Argersinger,* this court stated that it considered the right to counsel more essential to a fair trial than the right to a jury, one of the very rights to which we hold the DUII defendant is entitled. *Stevenson v. Holzman,* 254 Or 94, 99, 458 P2d 414 (1969). Of course, a jury trial, proof beyond a reasonable doubt, and the many other protections that surround a criminal prosecution make the assistance of counsel nearly indispensable for the ordinary defendant, as the legislature has recognized. Thus, while the Oregon Vehicle Code excludes the appointment of counsel for those infractions which it has turned into civil proceedings, we do not doubt that where this has not been accomplished the legislature would expect the offense to remain under the same statutory provisions for appointment of counsel as the other traffic crimes.

## Conclusion

Today's decision concerns only the offense of driving under the influence of intoxicants in its present status under the Oregon Vehicle Code.

The code represents a good faith effort to deal with traffic offenses in the regular courts in forms other than criminal law. Nothing prevents such a decriminalization of traffic offenses, if it is fully carried out. Nor need it exclude the offense of driving under the influence of intoxicants. We hold only that, considering the magnitude of the potential fine, the secondary sanctions in case of non-payment, the relationship of DUII to the other major traffic offenses, the evident legislative desire to emphasize the seriousness of this offense while facilitating its punishment, and the retention of criminal law enforcement procedures, the 1975 code did not free this offense from the punitive traits that characterize a criminal prosecution. Accordingly, petitioner is entitled to the constitutional and statutory protections afforded in the prosecutions

of the other major traffic offenses that remained traffic crimes under the code. The decision of the Court of Appeals is reversed with instructions to remand the case to the circuit court in accordance with this opinion.

Reversed.

**TONGUE, J.,** specially concurring.

I concur in the result reached by the majority, but not in all of the reasoning adopted by the majority in reaching that result.

Among other things, I do not agree with the majority in its primary reliance upon Article I, § 11 of the Oregon Constitution. In my opinion, the same result is required by Amendments VI and XIV to the Constitution of the United States and is not foreclosed by decisions of the Supreme Court of the United States, as I read those decisions.

I am also not willing to concede, as the majority would apparently hold, that the legislature may "decriminalize" any offense, no matter how serious, provided only that it does so properly and completely, after consideration of all of the various "factors" involved, and that the seriousness of the offense is only "one factor" to be considered and can never be "conclusive."

In particular, I am not willing to concede that the legislature may "decriminalize" the "first offense" only of any serious crime and leave for criminal prosecution as a crime any and all further offenses of the same nature by the same person. According to the majority, that question cannot properly be raised in this case and can only be properly raised upon a criminal prosecution for a second or further offense. I am not willing to concede that this is correct, except to the extent that any contention based upon an "enhanced penalty" for a second offense can obviously not be raised on trial for a first offense.

[ 111 ]

It appears from the legislative history of the 1975 Oregon Motor Vehicle Code that the legislature considered driving under the influence of intoxicants to be a serious offense because of the potential danger of death or serious injury to pedestrians, to other motorists and to their passengers, and that the primary reason for "decriminalizing" first offense for DUIL was that:

> "Procedurally, the traditional criminal treatment of traffic offenses has put severe stress upon Oregon's minor court system. Frequently the heavy caseloads, particularly in district court * * * have caused lengthy delays in bringing to trial the more serious cases such as those for driving under the influence of intoxicating liquor (DUIL). Whereas a person charged with a felony in this state in most cases is tried within 60 days of arrest, it is not unusual to find periods of six months or longer between arrest and trial in DUIL cases. * * *"

Surely this does not mean that in the event of congestion in the courts as the result of a heavy load of criminal prosecutions for serious crimes such as burglary, robbery, or assault with a dangerous weapon, the legislature may take away the constitutional right to trial by jury, the right to court appointed counsel and the right to require proof of guilt beyond a reasonable doubt for all first offenses simply by "redefining" all first offenses as "infractions," leaving for criminal prosecution all further offenses of the same nature by the same person.

**HOLMAN, J.,** dissenting.

I do not disagree with the factors or the methodology used by the majority in its analysis of the problem, but I do disagree with the apparent weight given the different factors, and, in any event, I disagree that it is necessary to hold unconstitutional the entire statutory scheme as it relates to first offense driving while under the influence.

As a commencing point, there was no such crime as drunken driving until the legislature originated one.

The legislature in its discretion may summarily abolish such a crime, if it desires. In the present instance it so intended, and the only issue is whether it accomplished its intention in compliance with constitutional requirements. Although the majority's opinion has demonstrated that many factors are at least tangentially relevant, it is my opinion that only two of them are preeminent in considering whether a successful conversion from criminal to civil has been accomplished: the penalty which may be imposed, and the custodial treatment permitted of a person who has been apprehended.

Addressing the penalty factor first, it is notable that the legislature in its intent to decriminalize first offense driving while under the influence has abolished any imprisonment for the offense. Of the rights in question here, it is generally recognized by all courts that the right to be represented by counsel is the preeminent one. *Stevenson v. Holzman,* 254 Or 94, 99, 458 P2d 414 (1969). This court and the Supreme Court of the United States have gone no further in holding that persons are entitled to counsel than to say that if imprisonment is involved, a defendant must be given appointed counsel absent a knowing waiver. *Argersinger v. Hamlin,* 407 US 25, 92 S Ct 2006, 32 L Ed2d 530 (1972); *Stevenson v. Holzman, supra.* If possible imprisonment determines whether one should be represented by counsel, it must also determine the entitlement to any lesser right. Thus, the majority is going further than this court and the Supreme Court of the United States has ever gone.

As the majority points out, two federal Court of Appeals cases have adopted $500 as the amount which requires a jury trial.[1] The Supreme Court of the United States threw considerable doubt upon the money limit when it approved a fine of $10,000 without a jury trial, which fine, admittedly, was not

---

[1] *United States v. Hamden,* 552 F2d 276 (9th Cir 1977); *Douglass v. First National Realty Corp.,* 543 F2d 894 (DC Cir 1976).

[ 113 ]

against an individual.[2] Although the majority admits that $1,000 is "at the margin of legislative discretion" when levied against an individual, it is apparent that some members of the majority are concerned about the size of the possible fine. I would hold that a $1,000 fine could be imposed without the protections claimed here. A stated amount of money is an unstable thing upon which to base a finding of unconstitutionality, because its relative value is transient. The basis for the $500 figure used by federal courts is 18 USC § 1(3), which defines a "petty offense" under federal law to be an offense the maximum punishment for which is not more than a $500 fine *and* six months in jail. The $500 figure was established by federal statute in 1930 and has never been changed. Today $500 has about one-fifth the purchasing power it had in 1930; conversely, in 1930 $500 had the purchasing power of approximately $2,500 today. However, even if $1,000 is presently a large enough sum of money to require the protections claimed, I do not deem is necessary to hold the entire application of the statute to a first offense of driving under the influence to be unconstitutional. My reasons therefor will be explained subsequently.

Insofar as the custodial handling of a person apprehended for a violation is concerned, most certainly no criminal connotations can be inferred from such person's being temporarily detained, separated from his vehicle, searched, and handcuffed, if necessary, for his own protection and for the protection of others. However, as it is pointed out in the majority's opinion, the statutes permit his being held to answer to the charge in lieu of bail. No person may constitutionally be held to answer to a civil charge in lieu of bail, and such a provision is patently unenforceable.

If a person who was held subject to bail was to raise the issue by a writ of habeas corpus, he would promptly be turned loose because to so hold him would be an unconstitutional application of the bail statute.

[2] *Muniz v. Hoffman,* 422 US 454, 95 S Ct 2178, 45 L Ed2d 319 (1975).

Why, then, are we required to invalidate the entire application of the statute when only a single provision of the statute is obviously unenforceable? There is no necessity to "throw out the baby with the bath water." The majority recognizes that it was certainly more important to the legislature to decriminalize driving while under the influence than to retain the bail provision. The majority states, "We feel safe in assuming that it is more important to the legislative scheme of the Oregon Vehicle Code to decriminalize traffic infractions than to retain the incompatible aspects of 'full custody' detention for those offenses that otherwise are effectively decriminalized. * * *." Note 16.

The same reasoning is applicable to the difference between a fine of $1,000 and one of $500. If a person is fined $1,000 and raises the issue, we would not invalidate the entire statutory application; rather, we would limit the fine to within allowable limits. It is clear that these two provisions are the difference between a statute that is arguably criminal and one that is civil. Had challenges to these two provisions previously been made and sustained, we would not have considered them in our resolution of the present challenge but would have sustained the statute. There is no reason why we should not so sustain the statute now or why we should completely frustrate the intention of the legislature to do something which is admittedly within its power—to decriminalize driving while under the influence. It is our obligation to allow the legislature to carry out its expressed intention by voiding those portions of the statute which offend constitutional requirements, when it is clear, as it is, that those portions would not have been critical to the passage of the act.

I, therefore, dissent.