Argued and submitted February 27, affirmed October 12,
reconsideration denied November 19,
petition for review denied December 9, 1981 (292 Or 232)

# STATE OF OREGON,
## *Respondent,*
### *v.*
# RODNEY RAY RHOADES,
## *Appellant.*

(No. C8005-31870, CA 18714)

634 P2d 806

Brad Johnson, Portland, argued the cause for appellant. On the brief was D. Richard Hammersley, Portland.

James E. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the

brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals a judgment declaring him to be a habitual traffic offender. ORS 484.705.[1] His ground for appeal is the court's refusal to appoint an attorney to represent him in that proceeding.

Defendant appeared in response to an Order to Show Cause why he should not be declared a habitual traffic offender. He was accompanied by an attorney. The attorney, having been informed by defendant of his indigent status, moved the court to appoint an attorney for defendant. After the court denied this motion, the attorney removed himself from the counsel table and defendant represented himself. The state, represented by a deputy district attorney, then presented its case. The court questioned defendant and reviewed the abstract of his driving record. On the basis of defendant's three convictions for Driving While Suspended within a five-year period, the court found defendant to be a habitual traffic offender.

■  We address, first, defendant's argument that Article I, section 11, of the Oregon Constitution,[2] as applied in *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), necessitates appointment of counsel for indigents in habitual offender proceedings. In *Brown,* the Supreme Court determined that a person was entitled to court-appointed counsel when he was indigent and charged with the traffic infraction of Driving Under the Influence

---

[1] ORS 484.705 provides in pertinent part:

"As used in ORS 484.700 to 484.750, unless the context requires otherwise, 'habitual offender' means any person, resident or nonresident, who within a five-year period, has been convicted of or forfeited bail for the number and kinds of traffic offenses described by paragraph (a) or (b) of this subsection, as evidenced by the records maintained by the division.

"(a) Three or more of any one or more of the following offenses:

" * * * * *

"(C) Driving a motor vehicle while his license, permit or privilege to drive has been suspended or revoked as defined by ORS 487.560;"

[2] Article I, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; * * * "

of Intoxicants (DUII). ORS 487.540.[3] The court held that, although the legislature had "decriminalized" the first DUII offense, the infraction still "retain[s] too many penal characteristics not to be a 'criminal prosecution' under Article I, section 11, of the Constitution." The court looked at a variety of "indicia" which have been used to determine what is, for constitutional purposes, a criminal prosecution: the type of offense, the prescribed penalty, the collateral consequences, the punitive significance of the sanction, and whether criminal procedures, such as arrest and detention, were involved. It concluded that:

" * * * considering the magnitude of the potential fine, the secondary sanctions in case of non-payment, the relationship of DUII to the other major traffic offenses, the evident legislative desire to emphasize the seriousness of this offense while facilitating its punishment, and the retention of criminal law enforcement procedures, the 1975 code did not free this offense from the punitive traits that characterize a criminal prosecution. Accordingly, petitioner is entitled to the constitutional and statutory protections afforded in the prosecutions of the other major traffic offenses that remained traffic crimes under the code." 280 Or at 110.

Defendant points out that the habitual traffic offender proceeding is initiated and prosecuted by the district attorney and that defendant is "charged," according to the language of ORS 484.720(2), with being an offender. While the proceedings do have these aspects of a criminal prosecution, unlike *Brown,* none of the other criminal procedures, such as arrest or detention, are involved, and the purpose is not punitive, but is intended to protect the public. The complaint in this matter is served as a summons in a civil action, ORS 484.725(1), and the appeal is taken as provided in civil cases. ORS 484.750.[4]

---

[3] A defendant found guilty of the infraction of Driving Under the Influence is punishable by a $1000 fine and is subject to pretrial procedures such as arrest and detention.

[4] ORS 484.725(1) provides that a copy of the Order to Show Cause why his license should not be suspended is to be served on the offender " * * * in the manner prescribed for the service of summons in a civil action."

ORS 484.750 provides:

"An appeal may be taken from any final action or order of a court entered under ORS 484.700 to 484.750 as provided in civil cases."

■    In a habitual traffic offender proceeding sanctions of incarceration or fine are not permitted. Defendant points out that the loss of a driver's license for ten years[5] is a serious sanction.[6] However, when the sanction is regulatory, rather than punitive, it does not support the characterization of the statute as criminal. In *Brown,* the Supreme Court stated:

"'The offense does not become 'criminal' rather than 'civil' merely because the loss of a license is a great inconvenience, so long as the suspension or revocation reflects a legislative, judicial, or administrative judgment that a traffic offender should not continue to drive." 280 Or at 105.

■    In *State v. Jackson,* 34 Or App 587, 579 P2d 299 (1978), we discussed the Habitual Traffic Offender Act and concluded that it was 'civil," because it did not result in a finding of guilt or the enhancement of a penalty. Commenting on the regulatory nature of the act, this court stated:

"The consequence of a finding that defendant is a habitual traffic offender is suspension of his vehicle operator's license, which reflects a legislative determination that the habitual offender should not continue to drive." 34 Or App at 590.

We reaffirm our conclusion in *Jackson* that the Habitual Traffic Offender Act is civil in nature; the sanction is regulatory rather than punitive.

---

[5] ORS 484.735 provides in pertinent part:

"(1) Except as provided in subsection (2) of this section, a license to operate motor vehicles in this state shall not be issued to a habitual offender:

"(a) For a period of 10 years after the date of the order of the court finding a person to be a habitual offender; and

" * * * * * * "

[6] Any secondary sanctions, such as criminal prosecution for driving without a license, could be ameliorated by defendant obtaining a probationary license. ORS 484.735(2) provides:

"A one-year, renewable probationary license may be issued to a habitual offender if he:

"(a) Successfully completes a defensive driving course conducted by the division;

"(b) Continually satisfies the conditions of the probationary license; and

"(c) Submits a report of a diagnostic examination conducted by a private physician showing to the satisfaction of the State Health Officer that he is physically and mentally competent to drive."

We turn now to defendant's reliance on the federal law. Defendant relies on *Argersinger v. Hamlin,* 407 US 25, 92 S Ct 2006, 32 L Ed 2d 530 (1972), where the Supreme Court held that a defendant facing imprisonment had a right to the assistance of appointed counsel if indigent. *Argersinger* is not in point here, for defendant is not facing incarceration.

Defendant also argues that because one who drives in violation of an order declaring him to be a habitual offender is subject to criminal prosecution and possible imprisonment, ORS 484.740,[7] denial of assistance of counsel in the habitual offender proceeding violates his right to counsel under the Sixth Amendment of the United States Constitution. A similar claim was made in *Ferguson v. Gathright,* 485 F2d 504 (4th Cir 1973), challenging the Virginia Habitual Offender Act. The Virginia act provides procedures closely similar to those in the Oregon act and also provides prosecution and imprisonment for driving during the period of prohibition. In *Ferguson,* the court held that the Sixth Amendment did not compel the appointment of counsel, and we agree. Distinguishing license revocation proceedings from criminal or quasi-criminal cases, the court said:

" * * * In the [license revocation] situation, the defendant loses simply his right to operate a motor vehicle on the public highways; he suffers no loss of liberty or threat of incarceration. [Footnote omitted.] He is not substantially different in condition from thousands of others, who, for one reason or another, have been denied, or have suffered a loss of, a driving permit. [Footnote omitted.] He comes under the threat of incarceration *only if* he subsequently determines to take the law into his own hands and to operate a motor vehicle on the public highway without a valid permit.

"His situation, in those circumstances, is substantially similar in principle to that of the person, who, denied a renewal of his license because of impaired vision or other cause, drives a motor vehicle on the public highway. It is

---

[7] ORS 484.740 provides:

"Except as provided in subsection (2) of ORS 484.735, it shall be unlawful for any person to operate a motor vehicle in this state while the order of the court prohibiting such operation remains in effect. A person who violates this section commits a Class C felony."

his subsequent defiance of the law, and only indirectly his revocation proceedings, that brings into play the criminal processes and places him in peril of imprisonment. * * * " 485 F2d at 506. (Emphasis in original.)

The court in *Ferguson* went on to draw analogies between the situation of a defendant whose driver's license is revoked and those of insurance agents, security salesmen and charitable foundations whose licenses have been revoked and are subsequently prosecuted criminally for violating their license revocations. It cites authority in each of the latter situations, holding that the revocation procedures are civil, not quasi-criminal, and that, therefore, the defendants were not entitled to counsel in their respective revocation proceedings. *See also, People v. McKnight,* 617 P2d 1178 (Colo 1980).

Affirmed.