Submitted on record and briefs October 2, 1981, reversed June 9, 1982

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL GENE NORTON,
*Appellant.*

(No. 16-80-06153, CA 19992)

646 P2d 53

Robert T. Chandler and Cornacchia & Chandler, Springfield, filed the brief for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and William F. Nessly, Jr., Assistant Attorney General, Salem, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

**WARREN, J.**

In this proceeding under the Habitual Traffic Offenders Act, ORS 484.700 to 484.750, defendant appeals from the trial court's ruling that he is a habitual offender.

Under ORS 484.705, a habitual offender is a person who, within a five-year period, accumulates three convictions for any of certain listed traffic offenses, including driving while suspended.

ORS 484.720 provides:

"(1) The administrator of the division shall certify in triplicate an abstract of the operating record as maintained by the division, of a habitual offender to the district attorney of the county in which the person resides, * * *.

"(2) The district attorney upon receiving the abstract shall forthwith file a complaint against the person named therein in the circuit court for the county in which such person resides, charging him with being a habitual offender. * * *"

Defendant was convicted of driving while suspended on October 18, 1974, May 15, 1975, and July 5, 1978. It was not until July 7, 1980, that a complaint was filed requesting that defendant be ordered to show cause why he should not be barred as a habitual offender from operating a motor vehicle in Oregon and why his driver's license should not be surrendered to the court. The record before us shows that, despite the fact that the third conviction occurred on July 5, 1978, the abstract was not received by the district attorney until June 25, 1980. There is no explanation for the Motor Vehicle Division's delay in forwarding the abstract.

Defendant moved to dismiss the complaint on the ground that the action was barred by the statute of limitations. He assigns as error the denial of that motion. He argues that two-year limitation in ORS 12.110(2) should apply to actions brought under the Habitual Traffic Offenders Act. He contends that the loss of driving privileges should be considered a penalty or forfeiture and, because an action under the act accrues upon a person's third conviction within a five-year period, it should be required to be brought within two years of that conviction. The action against defendant was not brought within two years

of his third conviction; therefore, he argues, it should be barred.

The state argues that the loss of driving privileges under the Habitual Traffic Offenders Act is intended to protect the public and lies well beyond the traditional fine, penalty and forfeiture actions contemplated by ORS 12.110(2) and, therefore, should not apply to these actions. Instead, according to the state, under ORS 12.250 there is no statute of limitations applicable to actions under ORS 484.720. ORS 12.250 provides:

"Unless otherwise made applicable thereto, the limitations prescribed in this chapter shall not apply to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit."

To accept the state's argument would be to concede that defendant, whose last conviction was on July 5, 1978, could be found to be a habitual offender in the year 2000 or beyond. This position is untenable, particularly in light of the indication in both ORS 484.715[1] and 484.720 that prompt action in the enforcement of the Habitual Traffic Offenders Act is contemplated.

In *State v. Rhoades,* 54 Or App 254, 634 P2d 806, *rev den* 292 Or 232 (1981), we stated that the sanction imposed by the Habitual Traffic Offenders Act was regulatory rather than punitive. In that case, the issue on appeal was whether a defendant in a habitual offender proceeding was entitled to court-appointed counsel. *See Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977). This court's analysis was, therefore, limited to whether the sanction should be considered to be a criminal sanction, despite the civil nature of the proceeding.

In this case, the issue is not whether or not the sanction is sufficiently punitive in nature to qualify as a

---

[1] ORS 484.715 provides, in pertinent part:

"(1) When the division receives an abstract of the conviction or bail forfeiture, under ORS 153.625, and the conviction or bail forfeiture is the second one of those described by ORS 484.705(1)(a) for the convicted person, the division immediately shall notify the licensee and offer the licensee an opportunity of an advisory meeting with a representative of the division.

"* * * * *"

criminal sanction, but, rather, whether there are *aspects* of penalty or forfeiture which would bring the act under the limitations of ORS 12.110(2). This is a different question from the one addressed in *Rhoades* and the determination in that case does not preclude a finding that the Habitual Traffic Offenders Act does effect a forfeiture or penalty, despite its having a purpose which is, in part, regulatory.

The purpose of the Habitual Traffic Offenders Act is set forth in ORS 484.710:

"(1)  To provide maximum safety for all persons who travel or otherwise use the public highways of this state;

"(2)  *To deny the privilege of operating motor vehicles* on the public highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her courts and the statutorily required acts of her administrative agencies; and

"(3)  *To discourage repetition of criminal acts by individuals against the peace and dignity of the state and her political subdivisions and to impose increased and added deprivation* of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws." (Emphasis added.)

We do not accept the argument that delay, no matter how extended, will never constitute a bar to an action having these goals. Substantial delay in bringing actions under the Act would subvert its declared purposes. Furthermore, it is apparent that this law does have punitive aspects and can be considered as effecting the forfeiture of an important privilege.

■ ■  Generally, forfeiture has been defined as divestiture without compensation of property used in a manner contrary to law. *See United States v. Eight (8) Rhodesian Stone Statues,* 449 F Supp 193 (CD Cal 1978). Licenses have not been considered property. However, forfeiture can be loss of position or personal right, as well as property, and the distinction between a right and privilege has been eroded to the point where it is doubtful that any meaningful distinction exists. *See Sherbert v. Verner,.* 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963); *Goldberg v. Kelly,* 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970). Furthermore, the

United States Supreme Court has recognized that a licensee has a substantial personal interest in his license to operate a motor vehicle and that loss of that license can work a great hardship. *Bell v. Burson,* 402 US 535, 539, 91 S Ct 1586, 29 L Ed 2d 90 (1970). Oregon has also recognized that the loss of driving privileges can be a form of regulation or a form of punishment, depending on the legislative purpose. *See Brown v. Multnomah County Dist. Ct., supra,* 280 Or at 105. The loss of driving privileges pursuant to a proceeding under the Habitual Traffic Offenders Act effects both a regulatory and punitive legislative purpose and forfeiture of an important personal privilege. Whether loss of driving privileges under the Habitual Traffic Offenders Act is analyzed as a penalty or a forfeiture, ORS 12.210 is the applicable statute of limitations.

Reversed.

**BUTTLER, P. J.,** dissenting.

The majority are rightly concerned with the lack of an express period of limitations during which an habitual traffic offender proceeding may be commenced against one who comes within the statutory definition of an habitual offender. ORS 484.705(1). To avoid that "untenable" (57 Or App at 682) result, they wrench the Habitual Traffic Offender Act into a posture where they can determine that it imposes either a "penalty" or a "forfeiture," or both, thereby bringing into play the two year statute of limitation provided by ORS 12.110(2) for an action on a statute for a penalty or a forfeiture to the state. I do not think the Act imposes either a penalty or a forfeiture, and for this court to hold that it does, in order to cure a perceived defect, may be a case where the medicament is worse than the disease. Accordingly, I dissent.

Reading the Habitual Traffic Offenders Act (ORS 484.700 - 484.750) as a whole makes it clear that the function of the Act is to determine the status of one who fits the statutory definition of an habitual offender. Once a driver has been judicially determined to have that status, his right to operate motor vehicles in this state is controlled and supervised by the Department of Motor Vehicles. ORS 484.735 provides, in relevant part:

"(2) A one-year, renewable probationary license may be issued to a habitual offender if he:

"(a) Successfully completes a defensive driving course conducted by the division;

"(b) Continually satisfies the conditions of the probationary license; and

"(c) Submits a report of a diagnostic examination conducted by a private physician showing to the satisfaction of the State Health Officer that he is physically and mentally competent to drive.

"3) The conditions of a probationary license shall include that if a habitual offender is convicted of more than one moving violation within any 12-month period the probationary license shall be revoked and may not be reinstated for one year from the date of last conviction.

"(4) The division may establish by rule additional conditions of a probationary license."

Although the status of habitual offender imposes severe restrictions on the offender's right to drive an automobile, those restrictions do not amount to a forfeiture. It may well be, as appears to be the case here, that the offender's driver's license has already been suspended at the time his status as an habitual offender is determined. Here, the defendant's three convictions within the relevant five year period were all for driving with a suspended operator's license, so it is particularly difficult to consider that this defendant "forfeited" his license as a result of this proceeding. ORS 484.730 requires that after a determination that the driver is an habitual offender, he surrender to the court all licenses or permits to operate a motor vehicle on the highways of this state. Here, it appears that defendant had none to surrender.

It is equally difficult to characterize this proceeding as an action for a penalty. The Act does not provide a fine or imprisonment as a result of a determination that the driver is an habitual offender:

"* * * The Act is not intended to punish habitual offenders; there is no such crime as being a habitual offender. The purpose of the Act is to protect the public. * * *" *State v. Wells,* 27 Or App 537, 540, 556 P2d 727 (1976).

The majority, in concluding that the legislature intended *some* statute of limitations to apply to proceedings

under the Act, emphasize the provisions of ORS 484.715 and 484.720, both of which indicate that prompt action be taken at different stages in the enforcement of the Act. However, ORS 484.715 requires prompt action by DMV when it receives an abstract of the second conviction described in ORS 484.705(1)(a) to notify the licensee and to offer the licensee an opportunity to meet with a representative of the division, with two purposes in mind: (1) to make sure the licensee is aware of the Habitual Offenders Act so that he will be aware of the consequences which may flow from an additional serious traffic offense, and (2) to advise the licensee of the availability of educational programs for driver improvement. It is apparent that the purpose of that statutory requirement is to obviate the necessity of proceeding against the driver as an habitual offender. The Act requires that the notice be given, but it does not require that the licensee accept the invitation to meet with a representative of DMV. That section has nothing to do with the time within which a proceeding must be commenced if the licensee is convicted of the third offense.

The prompt action required by ORS 484.720 applies to the district attorney after he receives the abstract of the driving record of the alleged offender from DMV. Subsection (2) of that statute requires the district attorney to file a complaint under the Act "forthwith." However, there is no such requirement in subsection (1) of that statute with respect to DMV. Perhaps there should be, but there is not. This case involves the delay of DMV in transmitting the abstract to the district attorney. The district attorney did proceed "forthwith" after receiving it.

Whether the legislature intended not to have a period of limitation applicable to proceedings under the Act, or whether the absence of such a limitation period is an oversight, is not so clear as the majority assume. Under ORS 484.730, there are only two bases on which the court may dismiss the proceedings: (1) if the person before the court is not the person named in the abstract, or (2) if he is not an habitual offender. There is nothing authorizing the court to dismiss for failure to commence the proceedings within a specified time or within a reasonable time.

If the failure to include a period of limitations within which proceedings under the Act must be com-

menced is a legislative oversight, we should leave it to the legislature to fill that void. Certainly, it is inappropriate to make a judicial determination that proceedings under the Act are either penal or effect a forfeiture, or both, in order to impose what we think is a reasonable limitation period. To date, such proceedings have been treated as civil proceedings, *see State v. Wells, supra;* if the court's opinion today holds that they are penal in nature, the result may be more than the majority bargain for. *See Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977).

Notwithstanding the absence of an express limitation period in the Act, there may be circumstances under which the court may determine that it would not effectuate the purposes of the Act to determine that the driver is an habitual offender because the driver, for a period of more, say, than 20 years after his last conviction (57 Or App at 682) has not demonstrated his indifference to the safety and welfare of others and his disrespect for the laws of the state. ORS 484.710(2). That question, however, is not before us here.

As a coda, I should mention that if there has been any prejudice in this case, it has been to the public, not the defendant.

Accordingly, I respectfully dissent.