Argued and submitted April 25, 1986, affirmed April 22, reconsideration denied
June 12, petition for review denied July 28, 1987 (303 Or 700)

## STATE OF OREGON,
*Respondent,*

*v.*

## PENNY MARIE FRITZ,
*Appellant.*

(10-84-08497 & 10-84-08498; CA A36727 & A36728)
(Cases consolidated)

735 P2d 1228

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

Newman, J., concurring in part; dissenting in part.

## RICHARDSON, P. J.

Defendant appeals two felony convictions for driving while her operator's license was revoked. The charges were consolidated for trial and appeal. She contends, for a variety of reasons, that the order revoking her license is invalid and, alternatively, that, if her license was properly revoked, she can be convicted only of misdemeanors, not felonies.

Defendant drove a motor vehicle on two separate occasions while her operator's license was revoked. Her license had been revoked pursuant to a circuit court order after the court found her to be an habitual traffic offender (HTO). *Former* ORS 484.730. At trial, defendant objected to admission of the HTO order on a variety of grounds.

The Habitual Traffic Offender Act (*former* ORS 487.700 *et seq*) provided that an HTO is a person who has, within a five-year period, been convicted of, *inter alia,* three or more offenses of driving while suspended (DWS). Defendant had been convicted of DWS in January and April, 1978, and May, 1979. Those three convictions were, in turn, based on a suspension of defendant's license by the Motor Vehicles Division on August 17, 1977. The three DWS convictions were the predicate offenses for the HTO order of February 4, 1982.

Defendant's first challenge is that the suspension underlying the three DWS convictions was invalid, because the state failed to prove, in this proceeding, that defendant had received lawful notice of the suspension. She argues that *State v. Tooley,* 297 Or 602, 687 P2d 1068 (1984), allows such a collateral challenge and that the state is required to prove that the notice of suspension complied with the statutory notice as interpreted in *Tooley.* She contends that, if her suspension was invalid because of a defective notice, the three DWS convictions are therefore invalid and cannot be used to support the HTO order which is the basis of the present prosecution.

The state satisfied its initial burden in this proceeding by proof of the HTO order of the circuit court. Defendant then had the burden of coming forward with evidence to establish that the predicate convictions are invalid. She must do more than claim that the notice must have been defective simply because the state has failed to prove otherwise. *See State v. Annino,* 46 Or App 743, 613 P2d 84, *rev den* 289 Or 588

(1980). Because defendant has made no showing that the notice was defective, this contention is without merit.

■ Her next challenge is that she was not represented by counsel and was denied court-appointed counsel in the HTO proceeding in the circuit court and that, therefore, the revocation of her license resulting from that proceeding cannot be used as a basis for this prosecution. Defendant was not entitled to court-appointed counsel in the HTO proceeding. *State v. Rhoades,* 54 Or App 254, 634 P2d 806, *rev den* 292 Or 232 (1981); *State v. Jackson,* 34 Or App 587, 579 P2d 299 (1978).

In her next objection to the revocation, defendant contends that the three prior DWS convictions were all invalid, because she was not represented by counsel when she was convicted. The state contends that defendant cannot collaterally attack the validity of the HTO order by showing that the underlying convictions were invalid. It argues that she could have raised the validity of the predicate convictions in the HTO proceeding and that her failure to do so prevents a later challenge. Although the state's position has arguable merit, we held in *State v. Hardt,* 81 Or App 607, 726 P2d 953 (1986), *adhered to* 83 Or App 221, 730 P2d 1278, *rev den* 303 Or 74 (1987), that a defendant in a driving while revoked prosecution can attack the convictions underlying the HTO order.

The trial court ruled that if defendant could collaterally attack the predicate offenses, she had failed to show that she was denied counsel in any of the three prior DWS convictions. He essentially rejected her testimony regarding the DWS proceedings.

The three previous DWS convictions were in the District Court for Coos County; two in 1978 and one in 1979. The district courts of the state were then courts of record. Defendant did not produce a transcript, tape recording or any other record of the district court proceedings. She testified that, when she appeared on the first citation for DWS she was asked if she wanted a court-appointed attorney. She said "yes" and filled out a financial statement. She testified that she was told that a lawyer would be appointed and that she would be notified by mail of her next court date. She subsequently received a letter and appeared in court in response, but no attorney was present to represent her. The judge asked

her how she wished to plead, and she responded, "Not guilty." The judge then said, "I hereby find you guilty" and imposed a fine. She testified that the proceedings involving the other two DWS convictions were similar in that in each counsel was appointed but did not appear, and she was convicted in a summary proceeding despite her not guilty plea.

Defendant cites *City of Pendleton v. Standerfer,* 297 Or 725, 688 P2d 68 (1984), and *State v. Grenvik,* 291 Or 99, 628 P2d 1195 (1981), and argues that a conviction obtained without the aid of counsel is invalid and cannot be used to support an HTO revocation order. She argues that she has sustained her burden of establishing that she was denied counsel and that, under *Grenvik,* a waiver of her rights will not be presumed. She contends that the state has failed to meet its burden of establishing a waiver and that, therefore, the DWS convictions are invalid and the present convictions must be reversed.

This is not a situation where defendant claims that, as an indigent, she was denied appointed counsel. She testified that, in each of the three DWS proceedings, counsel was appointed. What she claims is that the court summarily found her guilty in the absence of her court-appointed counsel. The trial court in this proceeding did not believe that rather improbable recitation. When a collaterally attacked conviction was in a court of record, the defendant must produce a record reasonably sufficient to support an assertion that she was denied counsel in the prior proceedings. *See State v. Leis,* 58 Or App 403, 648 P2d 1345, *rev den* 293 Or 653 (1982). One purpose of making an official record of judicial proceedings is so that a court reviewing a proceeding will not have to depend on the imperfect and possibly conflicting memories of persons who testify about what occurred.

A defendant may rely on testimony or evidence other than official court records if she can demonstrate that the necessary record is no longer available. Here, defendant's counsel stated that he had attempted, through an investigator, to obtain the Coos County District Court records. He said that, because the district court had two different locations, the efforts to obtain the records were "hampered." Defendant has not demonstrated that the court records were unavailable.

We conclude that the trial court properly rejected

defendant's collateral attack on the three DWS convictions. Defendant did not meet her burden of proof by presenting credible evidence that she was not represented by counsel at the time when the convictions were entered. There was no obligation on the state to establish that she had waived the presence of her counsel.

■ Defendant's final challenge to the HTO revocation is that the delay in bringing the proceeding in the circuit court violated her rights under Article I, section 11, of the Oregon Constitution. She contends that the district attorney of Umatilla County was notified of her third conviction for DWS in 1979 and did not bring the HTO proceeding until 1982. This issue was not raised in the trial court, and we could decline to review it. However, we wish to forestall any suggestion that this type of collateral challenge is available to a defendant. It does not relate to her Sixth Amendment right to counsel involved in *Baldasar v. Illinois,* 446 US 222, 100 S Ct 1585, 64 L Ed 2d 169 (1980); *City of Pendleton v. Standerfer, supra,* and *State v. Grenvik, supra,* nor does the challenge involve the substantive validity of the determination that defendant is an HTO. The procedural defect that she now raises was apparently not raised during the HTO proceeding or on appeal from the HTO order. The challenge simply comes too late.

Finally, defendant contends that, if the revocation order was valid, she can be convicted only of a misdemeanor and not a felony under *former* ORS 487.560(6). That statute provided:

> "Driving while suspended or revoked is a Class C felony if the suspension or revocation was the result of a finding that the person is an habitual traffic offender under ORS 484.727 * * *."

It was adopted by Or Laws 1983, chapter 758, § 11. It changed the HTO Act to provide that the hearing to determine if a person is an HTO is by the Motor Vehicles Division. Under *former* ORS 487.730, the circuit court held the required hearing and made that determination. When the legislature amended ORS 487.560 in 1983, it deleted any reference to ORS 487.730 or the former circuit court procedure and substituted a reference to the statute as it was amended in 1983.

Defendant argues that, because her license was revoked by the circuit court under *former* ORS 487.560, she

cannot be convicted for a felony under ORS 487.560(6), because the statute refers only to an HTO revocation by MVD under ORS 487.727. The state points out that defendant has raised the issue for the first time on appeal and requests that we decline to address it. ORAP 7.19. That rule allows us, in our discretion, to consider an error not properly preserved if it is apparent on the face of the record. We will address the merits of the claim of error because, if defendant is correct, she was convicted of two felonies under a statute which authorizes only convictions for misdemeanors. Review of the issue does not require assessment of facts; it involves only an issue of law.

■ The only distinction between an HTO proceeding under *former* ORS 487.730 and under the amended statute is that MVD and not the circuit court conducts the proceeding and makes the crucial determination. Otherwise, the criteria for determining if a person is an HTO are the same.

There is no rational distinction between the two determinations and no reason to treat violations of license revocation orders made under one type of procedure differently from violations of orders made under a different type of procedure. Defendant's literal reading of the statute would create an absurd result: a person whose license was revoked by the circuit court under the *former* HTO statute would be guilty of a misdemeanor, while a revocation by MVD under the amended statute would result in a felony conviction. There is no basis to conclude that the legislature intended that result. We conclude that defendant was properly convicted of a felony in each case.

Affirmed.

**NEWMAN, J.,** concurring in part; dissenting in part.

I dissent from the portion of the majority's opinion that holds that defendant was properly convicted in each case, not of a misdemeanor, but of felony driving while revoked under *former* ORS 487.560(6). That statute provides that driving while revoked is a Class C felony, if the "revocation was the result of a finding that the person is an habitual traffic offender under ORS 484.727." It does not refer to *former* ORS 484.730 (repealed in 1983), which is the statute under which

the court found in 1982 that defendant was an habitual traffic offender. The legislature may have inadvertently omitted reference to *former* ORS 484.730 when it amended *former* ORS 487.560 in 1983, but we cannot "insert what has been omitted." ORS 174.010. The result of ignoring the language of the statute is that defendant's convictions are changed from misdemeanors to felonies. The convictions for driving while revoked should not have been enhanced from misdemeanors to Class C felonies.

I concur with the remainder of the majority's opinion.